**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DAVITA INC.,
a Delaware corporation,
2000 16th St.
Denver, Colorado 80202

Plaintiff,
vs.

EMBASSY OF THE STATE OF KUWAIT,
2940 Tilden Street, NW
Washington, D.C. 20008

Defendant.

Civil Case No. 1:17-cv-00505

# COMPLAINT

DaVita Inc. ("DaVita"), formerly DaVita HealthCare Partners Inc., brings this Complaint against the Embassy of the State of Kuwait ("Embassy") on the following grounds:

## NATURE OF ACTION

1. This action to compel arbitration and for breach of contract and other claims arises under the Federal Arbitration Act, 9 U.S.C. §§ 1–208, and the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1330, 1391(f), and 1602–11. DaVita seeks to enforce and collect on a series of contracts with the Embassy under which DaVita provided life-sustaining dialysis services to Kuwaiti citizens while they were present in the United States. In return, the Embassy agreed to pay DaVita its billed charges. The Embassy has failed to make

those payments when due. DaVita has invoked the contracts' binding arbitration provision, but the Embassy also has refused to participate in arbitration in accordance with the contracts' terms.

**JURISDICTION**

2. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a). The Embassy is not immune from jurisdiction because, *inter alia*: (1) it has waived immunity, *id.* § 1605(a)(1); (2) this action "is based upon a commercial activity carried on in the United States by the foreign state," *id.* § 1605(a)(2); and (3) this action seeks "to enforce an agreement made by the foreign state with or for the benefit of a private party to submit to arbitration," *id.* § 1605(a)(6). This action also implicates the Convention on the Recognition and Enforcement of Foreign Arbitral Awards (known as the New York Convention), June 10, 1958, 21 U.S.T. 2517 (1970), over which this Court exercises original jurisdiction under the Federal Arbitration Act, 9 U.S.C. § 203.

**VENUE**

3. Venue is proper in the District of Columbia pursuant to 28 U.S.C. § 1391(f)(1) because a substantial part of the events and omissions giving rise to the claims alleged in this Complaint occurred in this District, and pursuant to 28 U.S.C. § 1391(f)(4) because this action is brought against a foreign state or political subdivision thereof. *Accord* 9 U.S.C. § 204 ("An action or proceeding over which the district courts have jurisdiction pursuant to section 203 of this title may be brought in any such court in which save for the arbitration agreement an action or proceeding with respect to the controversy between the parties could be brought.").

**PARTIES**

4. DaVita is a Delaware corporation that provides a complete range of dialysis treatments and support services across the United States to patients living with chronic kidney

disease. DaVita owns, operates, and/or manages, among other things, dialysis facilities engaged in the business of providing outpatient hemodialysis, peritoneal dialysis, and acute hemodialysis treatments and related ancillary services to chronic kidney disease patients in both outpatient and hospital clinics.

5. The Embassy is the diplomatic mission of the State of Kuwait to the United States. Kuwait has provided free universal health care to its citizens since 1950 and routinely arranges and pays for the healthcare services its citizens require while they are traveling in other countries, including the United States. The Health Office of the Embassy acts as a *de facto* health benefits provider to Kuwaiti nationals while they are in the United States. The Embassy's Health Office engages in activities similar to any other health insurance provider, which includes arranging and paying for medical services. The Embassy is a "foreign state" under the FSIA. 28 U.S.C. § 1603(a).

**NATURE OF THE DISPUTE**

6. Since at least February 2004, the Embassy has periodically asked DaVita to provide dialysis services to Kuwaiti nationals while they were in the United States. The Embassy agreed to pay DaVita for those services at DaVita's billed charges. By and large, the Embassy has paid DaVita's billed charges over the longstanding course of conduct between the parties.

7. This action arises out of a series of contracts covering twelve different patients who were provided with dialysis services by DaVita in the United States at the Embassy's request since 2013 (each, an "Agreement"). Despite the fact DaVita provided similar services to other patients for which the Embassy has correctly paid similar claims, the Embassy has failed to provide proper payments for these services, and in most cases, did not make any payments at all. Disputes arising out of or under the Agreements are all subject to binding arbitration as set forth

in the Demand for Arbitration ("Demand"), attached as Exhibit A, the terms and contents of which are incorporated herein. True and correct copies of the Agreements are attached as Exhibits 1 through 12 to the Demand and are also incorporated herein.[1]

8. Soon after providing the services, DaVita periodically issued and sent the Embassy written instruments known as "Claims" which identified, among other things, the patient, the outpatient dialysis facility where the patient was treated, the dates of treatment, the services provided, and the amount of DaVita's billed charges for the services. The Embassy never objected to the Claims. During their long course of conduct, the Embassy routinely accepted and paid DaVita's Claims at DaVita's billed charges—except for the Claims at issue in this case. True and correct copies of the Claims for which payment is sought in this Complaint and the Demand (the "Disputed Claims") have been previously supplied to the Embassy in the regular course of business and are incorporated herein.

9. DaVita provided services to six of the patients under written contracts known as a "Single Patient Agreement" or an "SPA," true copies of which are attached hereto as Exhibits 1–6 and are incorporated herein. The SPAs were each executed by both DaVita and the Embassy. Each SPA has virtually identical substantive terms governing the payment for services provided thereunder. The SPAs obligated the Embassy to pay DaVita the billed charges set forth in the

---

[1] The Agreements have been redacted to protect the patients' privacy rights and protected health information pursuant to the Health Insurance Portability and Accountability Act, the Health Information Technology for Economic and Clinical Health Act, and other similar provisions of law, as well as the parties' privacy rights. The names of the patients are known to the Embassy and are identified in this Complaint and the Demand by numbers 1 through 12 to safeguard their privacy rights. The documents evidencing the Agreements for each patient are attached to the Demand as Exhibits 1 through 12, respectively. The Embassy has unredacted copies of Exhibits 1 through 12 in its possession and can identify the patients using the unique Master Patient Index (MPI) numbers or the Embassy's patient identification number (Pt. ID#) identified on Exhibits 1 through 12.

Claims for these patients, unless the Embassy qualified for a prompt payment discount by paying within 60 days, which did not occur.

10. DaVita provided services to three of the patients under written letter agreements drafted and signed by the Embassy, true copies of which are attached hereto as Exhibits 7, 8 and 9 (collectively, the "Embassy Letter Agreements") and are incorporated herein. The Embassy Letter Agreements state the Embassy will pay DaVita its customary and reasonable charges for treating these patients. By virtue of the fact that the Embassy Letter Agreements post-date the SPAs, the Embassy Letter Agreements constituted the Embassy's agreement to pay for the services provided to these three patients upon the same rates, terms, and conditions as set forth in the SPAs. This means the Embassy was obligated to pay DaVita the billed charges set forth in the Claims for these patients, unless the Embassy qualified for a prompt payment discount by paying within 60 days, which did not occur.

11. DaVita provided life-sustaining dialysis services and related services to three other patients after the SPAs were first executed, but for which DaVita has not yet located either an SPA or an Embassy Letter Agreement. However, these patients were treated at the request of the Embassy, and both parties intended that these patients would be treated upon the same payment terms agreed upon and memorialized in the SPAs. This means the Embassy was obligated to pay DaVita the billed charges set forth in the Claims for these patients, unless the Embassy qualified for a prompt payment discount by paying within 60 days, which did not occur. These three patients are identified in Exhibits 10, 11 and 12, true copies of which are attached hereto and incorporated herein:

a. Exhibits 10 and 11 are letters from DaVita to the Embassy asking for payment on enumerated Claims for the two patients identified therein. The Embassy never responded or objected to the underlying Claims or these letters.

b. Exhibit 12 contains the Claims sent to the Embassy relating to another patient. The Embassy has not responded or objected to these Claims.

12. In reliance upon their longstanding course of conduct described above, DaVita provided services to the patients identified in Exhibits 10, 11 and 12. At a minimum, the course of conduct between the parties resulted in the creation of implied-in-fact contracts for the treatment of each of these patients (the "Implied-In-Fact Agreements").

13. The rates set forth in the Claims for the patients identified in Exhibits 10, 11 and 12 establish the customary and reasonable billed charges the Embassy agreed to pay for the services provided by DaVita to these patients at the request of the Embassy under the Implied-In-Fact Agreements.

14. The SPAs, the Embassy Letter Agreements, and the Implied-In-Fact Agreements are collectively referred to hereinafter as the "Agreements."

15. The Agreements authorized Kuwaiti citizens to receive life-sustaining dialysis treatments and related services at various DaVita outpatient dialysis facilities throughout the United States. In exchange, the Embassy agreed it would pay DaVita for services rendered to those patients.

16. The specific facts concerning the Agreements, services, and Disputed Claims for each patient are as follows:

a. Patient 1:
- Type of Agreement: SPA (Exhibit 1)
- Dates of services: January 16, 2013 through June 4, 2014
- Outpatient Dialysis Facility: Northside Dialysis, Pittsburgh, PA

- Amount of Disputed Claims Remaining Unpaid: $975,397.95

b. Patient 2:
- Type of Agreement: SPA (Exhibit 2)
- Dates of services: April 16, 2013 through May 18, 2013
- Outpatient Dialysis Facility: Century City Dialysis, Los Angeles, California
- Amount of Disputed Claims Remaining Unpaid: $66,513.00

c. Patient 3:
- Type of Agreement: SPA (Exhibit 3)
- Dates of services: January 29, 2013 through July 20, 2013
- Outpatient Dialysis Facility: JHHS North Bond Street, Baltimore, Maryland
- Amount of Disputed Claims Remaining Unpaid: $221,745.50

d. Patient 4:
- Type of Agreement: SPA (Exhibit 4)
- Dates of services: March 1, 2013 through September 7, 2015
- Outpatient Dialysis Facility: Century City Dialysis-Pediatrics, Los Angeles, California
- Amount of Disputed Claims Remaining Unpaid: $2,350,762.90

e. Patient 5:
- Type of Agreement: SPA (Exhibit 5)
- Dates of services: September 28, 2013 through December 14, 2013
- Outpatient Dialysis Facility: Beverly Hills Dialysis, Beverly Hills, California
- Amount of Disputed Claims Remaining Unpaid: $123,189.05

f. Patient 6:
- Type of Agreement: SPA (Exhibit 6)
- Dates of services: August 14, 2014 through December 13, 2014
- Outpatient Dialysis Facility: Boston Dialysis, Boston, MA
- Amount of Disputed Claims Remaining Unpaid: $188,274.30

g. Patient 7:
- Type of Agreement: Embassy Letter Agreement (Exhibit 7)
- Dates of services: August 2, 2013 through August 24, 2014
- Outpatient Dialysis Facility: Century City Dialysis, Los Angeles, California
- Amount of Disputed Claims Remaining Unpaid: $228,004.60

h. Patient 8:
- Type of Agreement: Embassy Letter Agreement (Exhibit 8)
- Dates of services: February 11, 2014 through March 17, 2015
- Outpatient Dialysis Facility: Century City Dialysis, Los Angeles, California
- Amount of Disputed Claims Remaining Unpaid: $698,654.90

i. Patient 9:

- Type of Agreement: Embassy Letter Agreement (Exhibit 9)
- Dates of services: October 22, 2014 through January 7, 2015
- Outpatient Dialysis Facility: Houston Galleria, Houston, Texas
- Amount of Disputed Claims Remaining Unpaid: $49,156.50

j. Patient 10:

- Type of Agreement: Implied-In-Fact contract evidenced by letters attached as Exhibit 10
- Dates of services: March 17, 2014 through April 2, 2014
- Outpatient Dialysis Facility: Crescent Heights Dialysis, Los Angeles, California
- Amount of Disputed Claims Remaining Unpaid: $38,143.00

k. Patient 11:

- Type of Agreement: Implied-In-Fact contract evidenced by letters attached as Exhibit 11
- Dates of services: November 10, 2014 through May 11, 2015
- Outpatient Dialysis Facility: Houston Galleria, Houston, Texas
- Amount of Disputed Claims Remaining Unpaid: $377,637.05

l. Patient 12:

- Type of Agreement: Implied-In-Fact contract evidenced by claims attached as Exhibit 12
- Dates of services: November 3, 2015 through December 30, 2015
- Outpatient Dialysis Facility: Crescent Heights Dialysis, Los Angeles, California
- Amount of Disputed Claims Remaining Unpaid: $150,870.70

17. There now exists a past due balance in excess of $5.4 million for unpaid claims owed to DaVita by the Embassy for the Disputed Claims.

18. Prior to initiating this action, DaVita engaged in repeated efforts to communicate with the Embassy to resolve the Disputed Claims. The Embassy failed to address DaVita's inquiries and requests for payment. DaVita was therefore forced to demand arbitration and to initiate this action.

**FIRST CLAIM FOR RELIEF**
**(Specific Performance of Arbitration Agreement)**

19. DaVita incorporates paragraphs 1 through 18 above.

20. The Agreements include the following arbitration provision:

> Any controversy, dispute or disagreement arising out of or relating to this Agreement, the breach thereof, or the subject matter thereof, shall be resolved exclusively by binding arbitration before a single arbitrator, which shall be conducted in Philadelphia, Pennsylvania, in accordance with the American Health Lawyers Association Alternative Dispute Resolution Service Rules of Procedure for Arbitration, and which, to the extent of the subject matter of the arbitration, shall be binding not only on all parties to this Agreement, but also on such parties' agents and principals, and judgment on the award rendered by the arbitrator may be entered in any court of competent jurisdiction.

(Demand, Exhibit A, ¶ 20 and Exhibit 1, page 4, ¶ 2.)

21. The Embassy has failed to address DaVita's request for payment of the Disputed Claims. DaVita therefore invoked the arbitration process set out in the Agreements.

22. The arbitration clause set forth above was a material provision of the Agreements.

23. DaVita has satisfied all of the conditions applicable to implementation of the arbitration provision contained in the Agreements.

24. The Embassy's failure and refusal to participate in the arbitration process is a material breach of the Agreements.

25. The Embassy's failure and refusal to participate in the arbitration process set out in the Agreements has caused, and continues to cause, damage and injury to DaVita.

26. This Court has the power under applicable law, including but not limited to 9 U.S.C. § 206, to "direct that arbitration be held in accordance with the agreement at any place therein provided for, whether that place is within or without the United States." The Agreements at issue here provide for arbitration in Philadelphia, Pennsylvania.

**SECOND CLAIM FOR RELIEF**
**(Breach of Contract – Single Patient Agreements)**

27. DaVita incorporates paragraphs 1 through 18 above.

28. The SPAs identified in paragraphs 16-a, 16-b, 16-c, 16-d, 16-e, and 16-f are valid and binding contracts between DaVita and the Embassy for the provision of services by DaVita in return for payment by the Embassy.

29. DaVita materially performed its obligations under the SPAs, including but not limited to the provision of dialysis services, except as excused by the Embassy's conduct.

30. The Embassy materially breached the SPAs by failing to pay DaVita's billed charges in accordance with the terms set forth in the SPAs.

31. DaVita has been and continues to be injured as a result of the Embassy's breach.

32. As a direct and proximate result of the Embassy's breaches of the SPAs, DaVita has suffered damages in the minimum amount of $3,925,882.30, plus late fees and pre-judgment interest at the maximum contractual and/or statutory rate, according to proof. DaVita reserves the right to amend this amount as additional damages are sustained and ascertained.

**THIRD CLAIM FOR RELIEF**
**(Breach of Contract – Embassy Letter Agreements)**

33. DaVita incorporates paragraphs 1 through 18 above.

34. The Embassy Letter Agreements identified in paragraphs 16-g, 16-h, and 16-i are valid and binding contracts obligating the Embassy to pay DaVita for the services provided to the patients identified in the Embassy Letter Agreements.

35. DaVita materially performed its obligations under the Embassy Letter Agreements, including but not limited to the provision of dialysis services to the patients identified therein, except as excused by the Embassy's conduct.

36. The Embassy materially breached the Embassy Letter Agreements by failing to pay DaVita's billed charges for services rendered in accordance with the terms set forth therein.

37. DaVita has been, and continues to be, injured as a result of the Embassy's breach of the Embassy Letter Agreements.

38. As a direct and proximate result of the Embassy's breaches of the Embassy Letter Agreements, DaVita has suffered damages in the minimum amount of $975,816.00, plus late fees and/or pre-judgment interest at the maximum contractual and/or statutory rate, according to proof. DaVita reserves the right to amend this amount as additional damages are sustained and ascertained.

**FOURTH CLAIM FOR RELIEF**
**(Breach of Contract - Implied-In-Fact Agreements)**

39. DaVita incorporates paragraphs 1 through 18 above.

40. The services provided by DaVita under the Implied-In Fact Agreements identified in paragraphs 16-j, 16-k, and 16-l were valuable to the Embassy since these services conferred a benefit to the patients at the Embassy's request.

41. Based on the parties' longstanding course of conduct and concurrent, related written agreements, the Embassy was on notice and knew that DaVita expected the Embassy to pay DaVita's billed charges for the Disputed Claims.

42. These circumstances established the Implied-In-Fact Agreements as implied-in-fact contracts requiring the Embassy to pay DaVita its billed charges for the Disputed Claims.

43. DaVita materially performed its obligations under the Implied-In-Fact Agreements, including but not limited to the provision of dialysis services, except as excused by the Embassy's conduct.

44. The Embassy materially breached the Implied-In-Fact Agreements by failing to pay DaVita for the Disputed Claims.

45. DaVita has been and continues to be injured as a result of the Embassy's breach of the Implied-In-Fact Agreements.

46. As a direct and proximate result of the Embassy's breaches of the Implied-In-Fact Agreements, DaVita has suffered damages in an amount exceeding $566,650.75, plus late fees and/or pre-judgment interest at the maximum contractual and/or statutory rate, according to proof. DaVita reserves the right to amend this amount as additional damages are sustained and ascertained.

**FIFTH CLAIM FOR RELIEF**
**(Quantum Meruit)**

47. DaVita incorporates paragraphs 1 through 18 above.

48. The services provided by DaVita to the Kuwaiti citizens identified above were valuable to the Embassy since these services conferred a benefit to the patients at the Embassy's request.

49. Based on the parties' longstanding course of conduct, the Embassy was on notice and knew that DaVita expected the Embassy to pay DaVita's billed charges for the Disputed Claims.

50. The services conferred a benefit upon the Embassy which it accepted in the discharge of its obligation to arrange and pay for healthcare services required by Kuwaiti citizens while they were traveling in the United States.

51. These circumstances reasonably notified the Embassy that DaVita provided the services with the expectation the Embassy would pay DaVita's billed charges for the Disputed Claims.

52. DaVita has been and continues to be damaged in the amount of its billed charges for the Disputed Claims.

53. The Embassy cannot justify its retention of the benefit conferred upon it without compensating DaVita.

54. The value of the services is the amount of the billed charges set forth in the Disputed Claims.

55. As a result, the Embassy now owes DaVita an amount in excess of $5.4 million for the Disputed Claims, plus interest at the maximum legal rate, according to proof.

**SIXTH CLAIM FOR RELIEF**
**(Promissory Estoppel)**

56. DaVita incorporates paragraphs 1 through 18 above.

57. The Embassy should have reasonably expected its promises would induce DaVita to provide services to the patients identified above and in the Disputed Claims.

58. In reliance upon the promises from the Embassy, DaVita was induced to and did provide dialysis services to its detriment since it has not been paid for the Disputed Claims.

59. Injustice can be avoided only by enforcing the Embassy's promises to pay for the Disputed Claims at DaVita's billed charges in an amount in excess of $5.4 million for the Disputed Claims, plus interest at the maximum legal rate, according to proof.

**SEVENTH CLAIM FOR RELIEF**
**(Unjust Enrichment)**

60. DaVita incorporates paragraphs 1 through 18 above.

61. In providing services to Kuwaiti patients, DaVita conferred a valuable benefit to those patients and thereby to the Embassy, which requested the services on behalf of its citizens.

62. Based on the parties' longstanding course of conduct and based on DaVita's efforts to notify the Embassy of the outstanding claims, the Embassy was on notice and knew that DaVita expected the Embassy to pay DaVita's billed charges for the Disputed Claims.

63. In failing to pay for the Disputed Claims, the Embassy retained a benefit for which it has not paid. It would be inequitable for the Embassy to receive the benefit of the services it requested on behalf of Kuwaiti nationals without paying for the full value of those services.

64. The Embassy has been unjustly enriched at DaVita's expense. As a result, the Embassy now owes DaVita the full value of its services, an amount in excess of $5.4 million for the Disputed Claims, plus interest at the maximum legal rate, according to proof.

WHEREFORE, DaVita prays for relief as follows:

1. Entry of an order, judgment, or decree compelling the parties to proceed to arbitration pursuant to the terms of the Agreements;

2. If arbitration is not ordered on any or all claims set forth in the Demand for Arbitration attached hereto, judgment in the minimum amount of $5.4 million, plus late fees and/or pre-judgment interest at the maximum contractual and/or statutory rate, beginning with the first calendar day after the due dates for the payment in full for each underlying claim, according to proof;

3. Attorneys' fees and costs; and

4. Such other relief as may be just and proper.

Dated: March 20, 2017

Respectfully submitted,

ARNOLD & PORTER KAYE SCHOLER, LLP

/s/ Christina A. Clark
Christina A. Clark
D.C. Bar No. 995326
601 Massachusetts Ave., NW
Washington D.C. 20001-3743
Office: 202.942.5233
Christina.Clark@apks.com

Robert Reeves Anderson
D.C. Bar No. 994989
370 Seventeenth Street, Suite 4400
Denver, CO 80202-1370
Office: 303.863.1000
Reeves.Anderson@apks.com

WINSTEN LAW GROUP

/s/ Michael S. Winsten
Michael S. Winsten
CA State Bar #126554
(*pro hac vice pending*)
27201 Puerta Real, Suite 140
Mission Viejo, California 92691
Office: 949.429.3400
mike@winsten.com